## IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

JIMMY HAWKINS,                    )
                                  )
        Plaintiff/Appellee,       )  McNairy Chancery No. 6844
                                  )
VS.                               )  Appeal No. 02A01-9708-CH-00203
                                  )
DENNIS ELLIS,                     )
                                  )
        Defendant/Appellant.      )

**FILED**

**October 12, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

APPEAL FROM THE CHANCERY COURT OF McNAIRY COUNTY
AT SELMER, TENNESSEE
THE HONORABLE DEWEY C. WHITENTON, CHANCELLOR

**JOE H. BYRD, JR.**
Jackson, Tennessee
Attorney for Appellant

**TERRY ABERNATHY**
Selmer, Tennessee
Attorney for Appellee

**AFFIRMED**

                                        **ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

Defendant/appellant, Dennis Ellis ("appellant"), appeals the judgment of the trial court awarding plaintiff/appellee, Jimmy Hawkins, Sr. ("appellee"), a net judgment of $28,867.64 and an equitable lien on the subject real estate until payment of the judgment.

For reasons stated hereinafter, we affirm the judgment of the trial court.

This case involves a residential construction contract entered into by appellee/general contractor and appellant/landowner. The parties signed a printed building contract on June 23, 1994. The contract contained handwritten provisions and a printed description of materials with a place provided to include handwritten insertions. This agreement and the entirety of its terms were evidenced by certain documents, including a sketch of the garage apartment to be occupied by appellant's son, another sketch of the main house with a sunroom added by the appellant, the Building Contract, and the Description of Materials. Later, a copy of the detailed blueprints of the home was ordered and used by the parties. The original construction cost as set forth in the written building contract was $140,000.00. This included the single family residence, the addition of the sunroom, and the garage apartment.

It is undisputed that the residence being built by appellee was never intended to be constructed in strict compliance with the detailed blueprints that were ordered. The breakfast bay window was eliminated from the plans, a sunroom was added, there was to be no basement, and the stairway was deleted from the plans thereby changing the interior and exterior walls and some of the ceiling heights. There were also some minor changes in some windows and doors and some changes in the roof design and exterior trim details.

In pertinent part, the Building Contract entered into by the parties on June 23, 1994, contained the following provision which is at the heart of this dispute:

> Owners and Builders agree that no changes from the original plans, sketches, specifications and description of materials shall be made, required, or collected for, unless both parties agree thereto in writing, as to the extent of the changes and the amount to be paid or deducted therefore, before work thereon shall have begun.

As construction progressed on the residence, numerous cosmetic and structural changes, deletions, and additions were made. The central dispute in this matter is whether these changes, deletions, and additions were performed with the knowledge and consent of the appellant. Appellee contends that these changes were performed at the appellant's request, and maintains that these changes were not agreed to in

writing, but were rather the result of oral conversations that took place at the construction site. More particularly, when these changes were undertaken, appellee contends that he would discuss said changes with appellant, tell appellant that the changes would add to the total bill, and give appellant a figure or at least some idea of the extra costs involved. Appellant, on the other hand, insists that many of these changes were undertaken without his knowledge or consent and as such are a breach of the above provision in the Building Contract. When appellant was asked to pay an extra amount over and above the contract price for these changes, he refused, and appellee ceased construction on the residence. When no solution could be reached between the parties, appellee filed a lien on the appellant's property and then filed suit to enforce that lien.

On February 3, 1995, appellee filed a complaint in which he alleged that he was due from the appellant the balance of $12,401.42 of a residential building contract, plus the sum of $38,058.68 for "extras" that were included in the residence. Thereafter, on April 25, 1995, appellant filed an answer to appellee's complaint with affirmative defenses. Appellant also filed a counterclaim against appellee alleging, *inter alia*, breach of contract, improvements made in a non-workmanlike manner, and breach of express and implied warranties of workmanship and materials whereby he was seeking $46,500.00 in compensatory damages from appellee.

This matter was tried in the Chancery Court of McNairy County, Tennessee, on March 3, 1996, through March 5, 1996. Upon reviewing the extensive evidence in this matter, the trial court awarded appellee $42,514.14 minus a $13,646.50 credit to appellant for completion items on the residence. The net amount of this judgment due appellee was $28,867.64. This appeal ensued.

Inasmuch as this case was tried by the trial court sitting without a jury, this Court's review on appeal is governed by Tennessee Rule of Appellate Procedure 13(d), which directs us to review the case *de novo*. *Roberts v. Robertson County Bd. of Educ.*, 692 S.W.2d 863, 865 (Tenn. Ct. App. 1985); *Haverlah v. Memphis Aviation, Inc.*, 674 S.W.2d 297, 300 (Tenn. Ct. App. 1984); Tenn. R. App. P. 13(d). In conducting a *de novo* review of the record below, however, this Court must presume that the trial court's findings of fact are correct. Under this standard of review, we must affirm the trial court's decision unless the trial court committed an error of law affecting the result or unless the evidence preponderates against the trial court's findings. *Roberts*, 692 S.W.2d at 865.

3

Appellant first contends that the trial court erred when it applied the principles of quasi-contract, *quantum meruit*, and unjust enrichment to the facts of this case "where none of said theories of recovery were alleged within the complaint of Appellee." We disagree.

This Court has no duty to create a claim the pleader does not spell out in its complaint. *Donaldson v. Donaldson*, 557 S.W.2d 60, 62 (Tenn. 1977). However, we will give effect to the substance rather than the form and terminology of a pleading. *Usrey v. Lewis*, 553 S.W.2d 612, 614 (Tenn. Ct. App. 1977) and *Wheeler v. City of Maryville*, 29 Tenn. App. 318, 321-22, 203 S.W.2d 924, 925-26 (1947). All that Tenn.R.Civ.P. 8.01 requires is that a complaint contain a short, plain statement of a claim showing the pleader is entitled to relief along with a claim of damage. *Adams v. Carter County Memorial Hospital*, 548 S.W.2d 307, 308-09 (Tenn. 1977).

Appellee sets forth the following in parts three and four of his complaint:

3. . . .[a]s the construction progressed, the Defendant specifically requested and required numerous changes and additions and extras to the original Building Contract, and the Plaintiff, pursuant to instructions and request from the Defendant, provided many extras and additions to the originally agreed upon structure or structures, and all of such additions and extras resulted in substantial additional cost and expenses to the Plaintiff, and provided substantial additional value to the Defendant.

4. The Plaintiff would further state and allege that all claimed extras and additions to the referenced Building Contract were done and performed in a good, substantial and workmanlike manner and in each instance, were done pursuant to the specific instructions or requests and agreement with the Defendant; and that, contrary to the terms of the Building Contract between these parties, neither party required or insisted upon any written change orders, and the Plaintiff would further allege that the Defendant having now received the value and benefit of any such changes and having been an active participant in requesting such changes and agreeing to such changes, he should now be estopped from asserting any contractual provisions to the contrary.

The petition makes no mention of quasi contract, *quantum meruit*, or unjust enrichment; however, after reviewing appellee's complaint, it is the opinion of this court that its allegations make out not only a contractual cause of action but also a cause of action based upon the above principles.

Considering that the trial in this matter encompassed two and one-half days, there was extensive evidence presented at trial. This evidence recapitulates the problems that developed between the parties, namely, the alleged oral agreements for changes and added amenities, the denial thereof by appellant, the

4

alleged defects in the construction and the remedial measures that were proposed to repair any defects.

This case boils down to the credibility of the parties. Appellee testified that many extras were considered and requested by appellant with the additional costs explained to him. To mention a few, appellee testified that brass faucets were asked for by appellant and installed accordingly by appellee; that wider trim material was used at additional costs; that dryvit was used on a gable instead of vinyl siding; that a sunroom was added in the place of an uncovered deck; that steel steps were requested instead of wooden steps; that curio cabinets were added in the place of a closet; that hardwood tile was used as a two foot border in each of the three bedrooms and in the sunroom instead of carpet; that hardwood tile was used in the garage apartment kitchen instead of vinyl flooring; that ceramic tile was used in a bathroom where vinyl flooring was to be used; that ceramic tile was used in the foyer and on the first fifty inches of the foyer wall; that ceramic tile was used in the sunroom instead of carpet; that glass blocks were used in the place of regular glass in the master bathroom; that step out corners were installed at each corner of the exterior of the house; that both the garage in the main house and the garage in the garage apartment were heated; and that there were to be two lavatories in the master bathroom instead of one. These are a few of the modifications that appellee claims were requested by appellant. Appellee insists that each of the "extras" was discussed with appellant including a discussion of the increase in cost.

Appellant not only denies requesting most of the "extras" but also denies that the cost of such was discussed with him. However, there are certain "extras" that appellant testified he wanted added to the residence. For instance, appellant testified that he wanted a wider door than the standard thirty-six inch door and, indeed, got such a door. Appellant further testified that it was his idea to have ceramic tile placed on his foyer wall. Appellant testified that appellee mentioned the possibility of glass blocks replacing some of the windows in the master bathroom and that appellant desired to have such glass blocks installed in place of the windows. In testifying to these "extras," appellant stated that he knew that the costs for the these additions would be higher.

In the case *sub judice*, we do not believe appellant can rely on the Building Contract provision requiring that all changes to the plans are to be made in writing and yet testify that he ordered certain changes which were incorporated into the residence without such a writing. Where there is a clause in a construction

5

contract which states that changes must be approved by the owner and contractor in writing and extra work is performed upon the owner's verbal instruction or with the owner's knowledge and without objection, the clause requiring that change orders must be in writing is waived by the course of dealing between the parties. *Moore Const. Co., Inc. V. Clarksville Dept. Of Electricity*, 707 S.W.2d 1 (Tenn. App. 1985).

As mentioned *supra*, this case essentially boils down to the credibility of the testimony. The trial judge heard many witnesses, comprising ten volumes and over thirteen hundred pages of trial testimony, and reviewed fourteen exhibits, including many photographs of the residence. The trial judge also was able to observe the witnesses and make a determination based upon what he saw and heard. In light of this, this court must apportion great deference to that finding when determining whether the evidence preponderates against the trial judge's determination. *See Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315 (Tenn. 1987). When a matter such as this hinges on the credibility of witnesses, the trial court will not be reversed unless there is found in the record clear, concrete, and convincing evidence other than the oral testimony of witnesses that contradicts the trial court's findings. *Galbreath v. Harris*, 811 S.W.2d 88, 91 (Tenn. Ct. App. 1990), cert. denied, 502 U.S. 939, 112 S.Ct. 374, 116 L.Ed.2d 326 (1991). As the United States Supreme Court has observed:

> The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources. In addition, the parties to a case on appeal have already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is the correct one; requiring them to persuade three more judges at the appellate level is requiring too much.

*Anderson v. City of Bessemer City*, 470 U.S. 564, 574-75, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).[1]

In light of the foregoing, we cannot say that the evidence preponderates against the findings of the trial court. Accordingly, we affirm the judgment of the trial court awarding appellee a net judgment of

---

[1]The same is also true for expert witnesses. The trial judge had the opportunity to hear and observe the expert witness in this matter. It was then left up to his discretion as to how much weight to give such testimony.

$28,867.64 and an equitable lien until such judgment is satisfied. Costs of this appeal are taxed to appellant, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:


_____
CRAWFORD, P.J., W.S.


_____
FARMER, J.

7